# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL CRISS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-0819-BF |
| | § | |
| JOHN E. POTTER, POSTMASTER | § | |
| GENERAL, UNITED STATES | § | |
| POSTAL SERVICE, | § | |
| | § | |
| Defendant. | § | |

## AMENDED MEMORANDUM OPINION AND ORDER[1]

Pursuant to the District Court's Order of Transfer (doc. 15), this is now a consent case before United States Magistrate Judge Paul D. Stickney. Before the Court is Defendant's Motion for Summary Judgment (doc. 24). Plaintiff responded to the motion on December 27, 2007. (Doc. 27.) Plaintiff filed a reply on January 11, 2008. (Doc. 28.) Having reviewed the evidence and considered the arguments, the Court finds that the motion should be **GRANTED**.

## BACKGROUND[2]

This is an employment discrimination suit. Plaintiff Michael Criss ("Plaintiff") brings this action against his employer, Defendant John E. Potter, Postmaster General, United States Postal Service ("Defendant") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (2006).

---

1. This Amended Memorandum Opinion and Order is entered to correct a typographical error in the Memorandum Opinion and Order entered on April 2, 2008.

2. Defendant's Motion for Summary Judgment set forth Plaintiff's version of the facts as understood from his Complaint and deposition. Plaintiff does not dispute these facts.

1

Plaintiff alleges discrimination based on race and reprisal for prior filing of complaints with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff, an African-American male, worked a regular bid job as a Level 4 Full-time Regular Mail Handler at the Dallas, Texas Processing and Distribution Center ("Dallas P&DC") in 2002. (Def. Mot. Summ. J. at 3.) On March 24, 1999, Plaintiff filed a complaint with the EEOC, which ended on February 29, 2000. (*Id.* at 4.) These allegations stem from several separate instances that occurred after Plaintiff filed his EEOC claim.

### A. July 8, 2002: Plaintiff Placed of the Clock

Plaintiff usually works in an area called the 110 Pound Track located in the Dallas P&DC. On July 8, 2002, Plaintiff's regular supervisor, Roy Ingram, had the day off, resulting in the North Dock Supervisor, Nichelle Hill ("Hill"), supervising his area for the day. (*Id.* at 4.) Hill needed someone from Plaintiff's work area to drive a "jitney," which is a higher level assignment. (*Id.*) A "jitney" is similar to a tow truck and requires training to drive. (*Id.*) If an employee works a higher level assignment, that employee is entitled to receive the higher level pay for the day. (*Id.*) Hill asked Plaintiff to volunteer to drive the "jitney," but he declined. (*Id.*) Hill left, but came back ten minutes later with an upper level manager, Gus Reynolds ("Reynolds"). Reynolds, a white male, is the Manager Distributions Opertions ("MDO"). (*Id.*) Hill asked Plaintiff again to volunteer to drive the "jitney," but he again declined. (*Id.*) Hill then instructed Plaintiff that she needed him to drive the "jitney," but Plaintiff still refused. Hill told Plaintiff that he was not following her instructions, and then informed him that she was putting him off the clock pursuant to 16.7 Emergency Procedure for failing to follow her instructions. (*Id.* at 5.) Hill told Plaintiff to leave and to return at his normal start time the following day and to report to her. (*Id.*)

### B. July 9-11, 2002: Plaintiff's Leave was Incorrectly Reported

Instead of returning to work on July 9, 2002, Plaintiff called in sick. He did not return to work until July 12, 2002. (*Id.* at 8.) When he returned to work, he reported to the Attendance Control Office so he could sign his leave request form for his absence. (*Id.*) Nicole Johnson ("Johnson"), an African American female, was working in the Attendance Control Office and gave Plaintiff a PS Form 3971 ("Form 3971"), which is a sick leave form, to sign. (*Id.*) Plaintiff told Johnson that he had called in and requested annual leave instead of sick leave. (*Id.*) Johnson stated that it had been recorded as sick leave when he called in, and Plaintiff told her that it had been improperly recorded. (*Id.*) Plaintiff could not remember who he had spoken to when he called in, and Johnson would not change it from sick leave to annual leave. (*Id.*) As a result, Johnson recorded Plaintiff's absence as leave without pay. (*Id.*) This discrepancy was later corrected and Plaintiff was paid for July 9–11, 2002. (*Id.*)

### C. July 12, 2002: Plaintiff was Denied Light Duty

When Plaintiff returned to work on July 12, 2002, he brought a request for light duty work (*Id.* at 11.) Plaintiff's normal supervisor, Ingram, was working that day. (*Id.*) Hill came over to Plaintiff's area and directed Plaintiff to report for a pre-disciplinary meeting. (*Id.*) Union Steward Byron Bennett was also present at the meeting. (*Id.*) During the meeting, Hill told Plaintiff that the purpose of the meeting was to discuss his failure to follow instructions. (*Id.*) She told Plaintiff that there was no light duty work available, but that he could come back to work if he was willing to follow instructions. (*Id.*)

### D. July 22, 2002: Plaintiff's Time was Incorrectly Recorded

On July 22, 2002, Plaintiff again called the Attendance Control Office to say he would not

be at work. (*Id.* at 12.) When he returned from this leave, he reported to the Attendance Control Office to sign his leave request form. (*Id.*) Toni Hayes ("Hayes") was working in the Attendance Control Office and gave him Form 3971 to sign. (*Id.*) Plaintiff claimed that his leave request was incorrectly recorded, resulting in leave without pay status. (*Id.*) Plaintiff could not recall who he spoke to when he called in. (*Id.*)

Plaintiff claims that a total of fifty-four hours of leave were incorrectly recorded between July 12, 2002 and July 22, 2002, resulting in leave without pay for those hours. (*Id.*) Plaintiff admits that MDO Deborah Dibbles ("Dibbles") approved the adjustment of this discrepancy, and paid him the fifty-four hours of back pay. (*Id.*)

**E. October 15, 2002: Plaintiff was Suspended**

On October 15, 2002, Relief Supervisor Vernell Moss ("Moss"), an African American male, was the acting Supervisor in Plaintiff's 110 Pound Track area. (*Id.* at 13.) A Scale Technician had the day off and Moss needed someone for a Level 5 assignment. (*Id.* at 13–14.) Moss asked Plaintiff to volunteer, but Plaintiff declined. (*Id.*) Moss left and returned with Dibbles, an African American female. (*Id.*) Moss again asked Plaintiff to volunteer, but Plaintiff still declined. (*Id.*) Moss then instructed Plaintiff to work the scale and stated that Plaintiff was failing to follow instructions. (*Id.*) Dibbles then told Plaintiff that he needed to work the scale, but Plaintiff said that he would not volunteer, and that he needed to go see the nurse. (*Id.*) As a result, Moss issued a seven day no loss of pay and no time off paper suspension on October 25, 2002. (*Id.* at 15.) After this incident, Plaintiff spoke with Sue Hunt ("Hunt"), an African American female who works in the Attendance Control Office, about using leave. (*Id.*) Hunt would not let Plaintiff use leave, which Plaintiff claims messed up his attendance records. (*Id.*)

4

**F. November 19, 2002: Plaintiff was Denied Opportunity to Remain on the Clock**

On November 19, 2002, Plaintiff spoke with Vickie Falcon ("Falcon") in the Attendance Control Office. (*Id.* at 16.) Plaintiff told Falcon that he wanted family medical leave without pay. (*Id.*) Falcon told Plaintiff that he needed to clear the medical unit when he came back. (*Id.*) Plaintiff told Falcon that it was his understanding that if he was not gone for more than three days, he did not need to provide medical documentation. (*Id.*) Falcon responded that Plaintiff needed to follow her instructions. (*Id.*)

Plaintiff returned to work on November 22, 2002, and reported to the Attendance Control Office. (*Id.*) Plaintiff completed Form 3971, and reported for work by checking in with Ingram. (*Id.* at 17.) Hunt found Plaintiff's Form 3971 in the Attendance Control Office and told Ingram that Plaintiff needed to clear the medical unit. (*Id.*) Because Plaintiff had not yet cleared the medical unit, Ingram told Plaintiff that he was putting him off the clock. (*Id.*) Plaintiff told Ingram that he did not believe he needed to clear the medical unit. (*Id.*) Both Plaintiff and Ingram went to the medical unit and tried to get Plaintiff cleared. (*Id.*) Plaintiff was unable to get clearance, and Ingram told him to go home. (*Id.*) The nurse then asked Plaintiff why he was out, but he told her that it was personal and confidential. (*Id.*) The nurse said that he needed to clear the medical unit, as was noted on his Form 3971. (*Id.*) Finally, the nurse told Plaintiff that he did not have to clear the medical unit, and Plaintiff returned to work. (*Id.*) Plaintiff claims that he was never paid for the seventy-two hours he was gone, but admits that he requested family medical leave without pay. (*Id.*)

Plaintiff claims that these instances occurred due to discrimination and retaliation. He also claims that he was subject to a hostile work environment. Defendant has moved for summary judgment on all claims.

## STANDARD OF REVIEW

The Court should only grant summary judgment if there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmovant bears the burden of proof at trial, the summary judgment movant may satisfy his burden by pointing to the absence of evidence supporting the nonmovant's case. *Celotex Corp*, 477 U.S. at 323. At this point, the nonmovant must show that summary judgment is not appropriate by going beyond the pleadings to demonstrate "specific facts showing that there is a genuine issue for trial." *Id.* Mere conclusory allegations or denials unsupported by specific facts are not enough. *Id.* Courts ruling on summary judgment motions "must review all of the evidence in record, but make no credibility determinations or weigh any evidence." *Peel &Co., Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001). "In reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the [fact finder] is not required to believe, and should give credence to evidence favoring the nonmoving party as well as to evidence supporting the moving party that is uncontradicted and unimpeached." *Id.*

## ANALYSIS

Defendant argues that Plaintiff has failed to make a *prima facie* case of race, color, or sex discrimination because he has not proven that similarly situated employees outside his protected class were treated preferably. Defendant also claims that Plaintiff has failed to state a *prima facie* case of retaliation because he cannot show causation. Even if Plaintiff has stated a *prima facie* case

of discrimination or retaliation, Defendant claims that it has legitimate, non-discriminatory reasons for each incident, and Plaintiff cannot prove pretext based on his subjective and speculative beliefs that he was discriminated and retaliated against. Finally, Defendant contends that Plaintiff's claim that he was subject to a hostile work environment because of his race, color, or sex also fails because he cannot show harassment or that the alleged conduct was severe or pervasive.

**A. Discrimination**

Analyzing whether a plaintiff has raised a genuine issue of fact regarding discrimination, depends on whether the plaintiff presents direct or circumstantial evidence. *Rachid v. Jack in the Box*, 376 F.3d 305, 309 (5th Cir. 2004). Plaintiff, in this case, has not presented direct evidence of discrimination. Instead, Plaintiff relies on circumstantial evidence to show he was discriminated against. When a plaintiff relies on circumstantial evidence, the court must evaluate the case within the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its subsequently refined analysis in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination. To make a *prima facie* case, the plaintiff must show that he (1) was subject to an adverse employment action, (2) is a member of a protected group, and (3) that he was treated differently than similarly situated individuals, who are not members of his protected group. *See McDonnell Douglas*, 411 U.S. at 802; *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir. 1992).

Once the plaintiff has made a *prima facie* case of discrimination, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 803–04; *Burdine*, 450 U.S. at 254–55. The defendant does not need to persuade the court

7

that it was actually motivated by the proffered reasons. *Burdine*, 450 U.S. at 254–55. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center*, 509 U.S. 502, 509 (1993).

If the defendant meets this burden, the plaintiff can only prevail if he proves that the employer's reasons are not true, and are a pretext for discrimination. *Reeves*, 530 U.S. at 143. While any presumption of discrimination created by the *prima face* case is eliminated once the defendant offers a legitimate, nondiscriminatory reason, the court may still consider the evidence establishing the plaintiff's *prima facie* case and "inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." *Id.* (quoting *Burdine*, 450 U.S. at 255).

Defendant first argues that Plaintiff has failed to make a *prima facie* case because he has not shown that similarly situated individuals were subject to more favorable treatment. To satisfy this requirement, Plaintiff must show that Defendant gave preferential treatment to employees outside his protected class under "nearly identical circumstances." *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) (citing *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam)). "The prerequisite that a plaintiff show 'nearly identical' circumstances rather than merely have 'similar circumstances' is not satisfied when the allegedly comparable employees hold different jobs, have different supervisors, are subject to different standards, engage in different conduct resulting in disciplinary action, engage in a higher number of actions that violate the employer's polies or engage in more serious misconduct." *Tolliver v. City of Dallas*, 1998 U.S. Dist. LEXIS 22098, *27 (N.D. Tex. Sept. 30, 1998) (Fitzwater, J.) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583; *Smith*, 891 F.2d at 1180; *Caro v. City of Dallas*, 1998 WL 527306, at *6 (N.D. Tex.

1998) (Fish, J.); *Cagler v. Lockheed Martin Corp.*, 1998 U.S. Dist. LEXIS 14960, 1998 WL 637363, at *4 (E.D. La. Sept. 16, 1998); *Williams v. C.J. Gayfers & Co.*, 11 F. Supp. 2d 854, 1998 WL 427573, at *2 n.3 (S.D. Miss. 1998); *Parikh v. United Artists Theatre Circuit, Inc.*, 934 F.Supp. 760, 766 (S.D. Miss. 1996); *Puissegur v. United States Postal Serv.*, 1996 U.S. Dist. LEXIS 5054, 1996 WL 185812, at *5 (E.D. La. Apr. 18, 1996).

In support of his claim, Plaintiff relies on nineteen statements written by other employees of Defendant. (Pl.'s Memo. Deny Def.'s Mot. Summ. J. at 15.) Plaintiff argues that these statements show that individuals in the same situation were never treated in the same manner that Plaintiff was treated. (*Id.*) Rule 56(c) of the FEDERAL RULES OF CIVIL PROCEDURE states that "pleadings, depositions, answers to interrogatories, admissions on file, and affidavits" should be considered in determining whether a genuine issue of material fact exists. "Materials that [do] not come within the categories enumerated in Rule 56(c) should not be considered." *Jones v. Menard*, 559 F.2d 1282 (5th Cir. 1977). The Fifth Circuit has held that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988). *See also Meserole v. M/V Fina Belgique*, 736 F.2d 147 (5th Cir. 1984) (holding that an unsworn letter from Plaintiff's expert is not competent summary judgment evidence); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (finding that while a sworn statement may have raised a genuine issue of material fact, an unsworn statement cannot be considered on summary judgment motions). An exception to this rule exists under 28 U.S.C. § 1746, "which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.' *Id.* This requirement is necessary so that affiants who sign onto intentional falsehoods can be liable for the

penalty of perjury. *Id.*

The nineteen statements relied on by Plaintiff to satisfied his burden of proving that similarly situated individual were treated differently are not competent summary judgment evidence. All of the written statements are unsworn. (Def.'s Mot. Summ. J. App. at 257–75.) These statements also do not contain language indicating that the statements are "true and correct" or made "under the penalty of perjury." Plaintiff has failed to proved any evidence beyond these nineteen statements, demonstrating that similarly situated individuals, who are not members of his protected group, were treated differently. Plaintiff has, therefore, failed to establish a *prima facie* case of discrimination.

Even if the Court considered these nineteen statements to be competent summary judgment evidence, they still do not create a genuine issue of material fact. Only two of these written statements are provided by persons outside Plaintiff's protected race and color group. One of these two written statements is provided by a Caucasian male, who states that in October 1996 he provided his supervisor, Donna Martin ("Martin") with a note from his doctor stating that he needed a light duty assignment. Martin arranged for him to have two weeks of light duty pursuant to this request. Martin was not one of Plaintiff's supervisors, and Plaintiff does not make any allegations against Martin. It is also unclear if Plaintiff and the author of this letter held the same position. The second of these two statements was written by an Asian male who states that he has never been charged for failing to follow instructions or put off the clock when he declined a higher level position. He does not state which supervisors offered him the higher level position. Therefore, neither of these statements created a genuine issue of material fact.

The remainder of the written statements either do not indicate race or color, or identify themselves as African American. Eight of the nineteen statements are written by individuals who

identify themselves as African American. The fact that other members of Plaintiff's protected class were treated more favorable indicates that even if the two authors outside Plaintiff's protected class were similarly situated, the favorable treatment was not based on race or color. The same is true for Plaintiff's allegation of sex/gender discrimination. While three of the statements were provided by women, six of the statements were provided by men. Therefore, even if the women were found to be similarly situated and treated more favorably than Plaintiff, their treatment does not appear to be based on gender because six men were also treated more favorably. As a result, even if the nineteen unsworn statements are considered as summary judgment evidence, none of the authors are similarly situated to Plaintiff, and even if similarly situated, there is no evidence that favorable treatment was based on race, color, or gender. Accordingly, Plaintiff has failed to state a *prima facie* case.

Even if Plaintiff has stated a *prima facie* discrimination claim, Plaintiff is unable to show that Defendant's articulated reasons for its actions are untrue or a prextext for discrimination. Defendant has shown a legitimate, nondiscriminatory reason behind each incident. Plaintiff was placed off the clock on July 8, 2002 for failure to follow instructions. On July 9–11, 2002 and on July 22, 2002, Plaintiff's leave was incorrectly recorded in error, resulting in Plaintiff receiving leave without pay. These discrepancies were due to errors in recording when Plaintiff initially called in and were eventually corrected, and Plaintiff was paid for this time. On July 12, 2002, Plaintiff was denied a light duty assignment; however, there were no light duty assignments available on this day. On October 15, 2002, Plaintiff was suspended for not following directions and was unable to use leave. Finally, on November 19, 2002, Plaintiff was told that he could not return to work until he had been cleared by the medical unit. While he was finally allowed to return to work without clearing the medical unit, the employees actions were based on a belief that it was required. He had requested

leave without pay status, so he was not entitled to receive compensation for this discrepancy. These are legitimate, nondiscriminatory reasons as to why each incident occurred. Plaintiff bears the burden of proving that these are untrue and merely a pretext for discrimination.

Plaintiff relies upon the same evidence as that supporting his *prima facie* case to show pretext. The court may still consider the evidence establishing the plaintiff's *prima facie* case and "inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 255). There is no evidence beyond Plaintiff's own speculation that these incidents occurred as a result of Plaintiff's race, color, or gender. Plaintiff states that "[h]e feels 'they' do [not] like him because he knows what they are supposed to be doing, they can[not] do anything right without him filing on them, and he believes it is a conspiracy by all of management." (Pl.'s Memo Deny Def.'s Mot. Summ. J. at 17–18.) A plaintiff's speculation that the employer was motivated by discriminatory reasons is insufficient to establish a claim. *Grimes v. Texas Dept. Of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996) (citing *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (noting that an employee's subjective belief that discrimination occurred is not sufficient). Because no evidence exists beyond Plaintiff's own speculation that these incidents occurred because of his race, color, or sex, Plaintiff has failed to meet his burden of proving that Defendant's legitimate, nondiscriminatory reasons were pretext. For these reasons, the Court grants Defendant's summary judgment motion on Plaintiff's discrimination claim.

**B. Retaliation**

Similarly, Plaintiff's has also failed to show that a genuine issue of material fact exists regarding his retaliation claim. When attempting to prove a claim of retaliation under Title VII by offering circumstantial evidence, the Court proceeds under the *McDonnell Douglas* frame work discussed above. *Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 805 (5th Cir. 2007). Therefore, to establish a *prima facie* claim for retaliation, Plaintiff must show that (1) he is engaged in an activity protected by Title VII, (2) he was subsequently disadvantaged by an adverse action, and (3) there is a causal link between the protected activity and the adverse action. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439 (5th Cir. 2005) (citing *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167 (5th Cir. 1999).

Plaintiff claims that the July 8, 2002 incident occurred because Hill and Reynolds were retaliating against him for filing an EEOC complaint. The filing of an EEOC complaint is clearly a protected activity within the meaning of the statute. *Id.* (citing *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000). Plaintiff has, therefore, satisfied the first element. In support for his retaliation claim, Plaintiff argues that he has presented nineteen written statements to show that he was retaliated against. He argues that these statements prove that similarly situated individuals outside his protected class were treated differently. As stated above, this evidence is not competent summary judgment evidence. Moreover, even if the Court were to accept these statements as competent summary judgment evidence there is no indication that the individuals were similarly situated to Plaintiff. None of these statements list Hill or Reynolds as the authors' supervisors.

While Plaintiff has failed to present any other evidence demonstrating that Hill and Reynolds retaliated against Plaintiff for filing an EEOC complaint, it is also important to note the temporal

proximity between the two events. In *Clark County School District v. Breeden*, 532 U.S. 268, 273–74 (2001), the United States Supreme Court found that "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" In that case, the Supreme Court held that "[a]ction taken . . . 20 months later suggest, by itself, no causality at all." *Id.* Accordingly, even if Hill or Reynolds had some knowledge that Plaintiff filed an EEOC complaint, which ended over two years before the incident, this is insufficient to show causation.

Plaintiff also claims that the July 9–11, 2002 incident was in retaliation for Plaintiff's filing of an EEOC complaint. Plaintiff is also unable to establish a *prima facie* case of retaliation against Johnson for the same reasons he cannot establish a claim against Hill and Reynolds. Moreover, even if Plaintiff could show a *prima facie* case, he has failed to show that Defendant's proffered legitimate reason is a pretext. Defendant claims that Johnson reasonably relied on Plaintiff's records, which indicated that Plaintiff called in for sick leave. Plaintiff argues that because Johnson was not the one who took Plaintiff's call, she should have relied on the information Plaintiff told her, instead of what had been recorded. The fact that Johnson chose to rely on notes made by another employee instead of what Johnson told her does not show pretext. The evidence does not show any connection between Johnson's decision to rely on notes in Plaintiff's records when recording leave and Plaintiff's EEOC complaint. Accordingly, Plaintiff has failed to show the causation element in his *prima facie* case regarding the July 9–11, 2002 incident, and even if he could establish a *prima facie* case, Plaintiff cannot show pretext.

In regards to the July 12, 2002 incident, where Plaintiff was denied light duty, Plaintiff

alleges that this denial by Hill and Reynolds was in retaliation for Plaintiff's previous refusal to drive the "jitney" on July 8, 2002. Plaintiff did not file an EEOC complaint regarding the July 8, 2002 incident, and his refusal to drive the "jitney" is not a protected activity. Accordingly, Plaintiff has failed to establish that the incident was retaliation. Likewise, Plaintiff believes the July 22, 2002 leave dispute incident was retaliation for his use of sick leave. (Pl.'s Memo. Deny Def.'s Mot. Summ. J. at 21.) Plaintiff's use of sick leave is not a protected activity. Plaintiff "admits he knows [the July 22, 2002 incident] was for some reason other than his prior EEO[C] activity." (*Id.*) Because Plaintiff cannot show that the July 22, 2002 incident occurred as retaliation for a protected activity, Plaintiff is unable to state a *prima facie* case.

In relation to the October 15, 2002 incident Plaintiff does not claim that Moss was retaliating. However, he does claim that by concurring with Moss, Dibbles was retaliating against Plaintiff for his prior EEOC activity. As discussed above, Plaintiff is not able to establish the causation element of the *prima facie* case of retaliation. Plaintiff also alleges that Hunt retaliated against him during this incident. He alleges that she would not let him use leave. While it is unclear what Plaintiff believes Hunt is retaliating against, if it is his EEOC activity, he cannot establish the causation element, and if it was based on Plaintiff's use of sick leave, that is not a protected activity. Therefore, Plaintiff is unable to establish a retaliation claim based on the October 15, 2002 incident.

Finally, Plaintiff argues that the November 19, 2002 incident occurred because Hunt was retaliating against Plaintiff for his prior EEOC filings, and that Dibbles was retaliating due to the October 15, 2002 incident. Plaintiff also argues that he believes that he was being retaliated against because he knows how to present his documentation, and that he is showing up other employees. As already discussed, the unsworn statements of nineteen individuals are not competent evidence

15

and the temporal proximity between the closure of his EEOC complaint and the incidents is over two years. As a result, Plaintiff has failed to show the causation requirment necessary for a retailation claim based on Hunt's actions. Moreover, Plaintiff's arguments that Dibbles was retaliating for the October 15, 2002 incident, and that employees were retaliating because he was showing them up at work also fail. These are not protected activities upon which a retaliation claim can be based.

Given that the unsworn statements are not competent summary judgment evidence, and Plaintiff's EEOC complaint ended more than two years before these incidents occurred, the Court finds that Plaintiff has failed to establish a *prima facie* case of retaliation based on Plaintiff's EEOC activity. Moreover, Plaintiff's refusal to drive a "jitney" or Plaintiff's use of sick leave cannot serve as the basis for a retaliation claim because they are not protected activity. The Court, therefore, grants Defendant's motion for summary judgment on Plaintiff's retaliation claim.

### C. Hostile Work Environment

To establish a claim for a hostile work environment, a plaintiff must show that: "(1) [he] is a member of a protected class; (2) [he] was subjected to unwelcome harassment; (3) the harassment affected a term or condition of [his] employment; (4) the harassment was motivated by [his] membership in a protected class; and (5) the [employer] knew or should have known about the harassment and failed to take prompt remedial action." *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 347 (5th Cir. 2007). When the harassment is committed by a supervisor with authority over the plaintiff, however, satisfaction of the first four elements will result in the employer being held vicariously liable. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353–54 (5th Cir. 2001).

Defendant first argues that Plaintiff has failed to show that Plaintiff was subject to

16

unwelcome harassment. The first incident that Plaintiff complains of occurred on July 8, 2002, over two years after Plaintiff's EEO complaint was closed. Plaintiff has also failed to show that these incidents were based on his race, color, or sex. Moreover, Defendant has offered a legitimate, nondiscriminatory reason for each incident that Plaintiff has complained of, and Plaintiff has not shown that these reasons are not true, but rather a pretext. Therefore, Plaintiff has not shown that these incidents constitute harassment.

Even if Plaintiff is able to show a fact issue as to harassment, he is unable to show that "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Celestine*, 266 F.3d at 353. In order to be "sufficiently severe or pervasive," the complained of conduct must be both objectively and subjectively offensive. *Harris v. Forklift Sys.*, 510 U.S. 17, 21–22 (1993). In other words, in addition to the victim perceiving the environment as hostile, a reasonable person must also have viewed the conduct to be hostile or abusive. *Id.* To determine a hostile work environment, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" are all considered. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000).

Courts have allowed complaints of a hostile work environment to proceed past summary judgment, reasoning that a fact issue exists as to whether the conduct is sufficiently severe or pervasive in circumstances when African-American employees were subject to a variety of racial slurs over a three-year period or when a plaintiff was subjected to offensive, sex based comments two to three times per week. *See Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000) *and*

*Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996).

Defendant claims that the incidents complained of were isolated acts, each of which involved different individuals. Even if these actions were related, Defendant claims that Plaintiff has failed to show that it is sufficiently severe, or that it has created an abusive working environment. Plaintiff complains of six instances of discrimination, over a four month time span. At no time was there a threat of physical force, humiliation, or offensive utterances.

Defendant has met its burden of pointing to the absence of evidence supporting Plaintiff's hostile work environment claim. Plaintiff has failed to point to specific evidence showing a genuine issue of material fact. Instead, Plaintiff makes a single conclusory statement that "Plaintiff has showed evidence of a hostile work environment, and this claim should be granted." (Pl.'s Memo. Deny Def.'s Mot. Summ. J. at 23.) He has not presented specific facts demonstrating how Defendant's actions constitute harassment, how that harassment is severe and pervasive, or how it created an abusive environment. As a result, Plaintiff has failed to meet its burden of showing a genuine issue of material fact exists. Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's hostile work environment claim.

## CONCLUSION

For the reasons stated above, the Court finds that Plaintiff has failed to establish a *prima facie* case on his discrimination, retaliation, and hostile work environment claims. Even if Plaintiff established his *prima facie* case on for discrimination or retaliation, Defendant has proffered legitimate, nondiscriminatory reasons for these incidents, and Plaintiff has failed to show pretext. The Court, therefore, **GRANTS** Defendant's Motion for Summary Judgment on all of Plaintiff's claims and dismisses these claims with prejudice.

**SO ORDERED.**  April 14, 2008.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE